Good morning, ladies and gentlemen. Before we begin, I would like to note the presence on the bench and welcome to the bench of the Sixth Circuit, the Honorable Terrence Berg, U.S. District Judge for the Eastern District of Michigan, sitting by designation. We appreciate your coming down to help us keep current with our docket. I believe before we call the case, we have a motion to be presented. Good morning, Your Honors. May it please the Court. This morning, it is my distinct honor and privilege to introduce to the Court two new attorneys currently serving as law clerks to the Honorable Terrence Berg. I will move the admission of Samuel Joseph Diaz of Detroit, Michigan, who is a member of the State Bar of California and otherwise qualified under the rules of this Court. And also of Courtney K. Lanz of Detroit, Michigan, who is a member of the State Bar of Michigan, the State Bar of Wisconsin, and the United States District Courts for the Eastern and Western Districts, I'm sorry, the Eastern District of Michigan and the Western District of Wisconsin. I move that they be admitted to the Bar of this Court. Motion will be granted and you may be sworn in. Mrs. Crutcher will administer the oath. Please raise your right hand. Do you solemnly swear or affirm that you will demean yourself as an attorney and counselor of this Court and that you will support and defend the Constitution of the United States, so help you God? I do. Congratulations and welcome to the Sixth Circuit. Thank you. Congratulations. Thank you very much. Welcome. Thank you. Thank you, Your Honor. Thank you all. Congratulations. Before we call the case, I'd like to advise appellants, if you have reserved any time for rebuttal or wish to reserve any time for rebuttal, I'd appreciate your letting me know at the beginning of your arguments and the clerk may call the first case. Case No. 15-1836, Maine Boggs v. County of Ogden. May it please the Court? And, Judge Boggs, may I reserve two minutes for rebuttal? You may. So this is a case involving a district court clerk in the district court in Holland, Michigan, who was terminated after she requested a three-week extension to her leave of absence. In this case, comes to the court after having been dismissed by the district court judge who granted summary judgment to both the County of Ottawa and to the 58th District Court. There are two issues on appeal. The first is whether the county should be considered the co-employer of the 58th District Court. And the second is whether the employer proved or whether there was a legitimate question of fact over whether or not it would impose an undue hardship on court operations and the county to grant this leave extension. Before I jump into the argument, I'd like to address specifically the circumstances surrounding the leave of absence. It's a little bit complicated and let me just set forth what those facts are. So, Renee Mott suffered from a pulmonary embolism and a cerebral brain clot in December of 2010. In January of 2011, she requested a leave of absence. And the decision was made to grant that leave of absence on a part-time basis from January 11th through July 31st. Actually, the leave was approved on January 31st, but it was retroactive to January 17th. And then, as a result of that leave of absence, Ms. Mott stopped being the court recorder for Judge Jonas and she was put into a half-time position as a general district court clerk. And the general district court clerk was substituted for Renee Mott and became the full-time court operator for Judge Jonas. That seemed to be working out fine until June 3rd when the county and court officials approached Ms. Mott and reduced her leave, shortened her leave time by about three weeks. So, instead of extending the leave to July 31st, it was extended to July 11th and she was given a return-to-work date of July 17th. I'm not clear why there's that week gap. But then, she accepts that and on Friday, June 17th, so now we're about a month before the end of her leave of absence, she has a reaction to some medication. And she talks to her employer about that and says she's going to miss work and there's a discussion that takes place with the county human resources representatives. The next day, June 20th, this is a Monday, she reports to work and she's told that she has to leave, that she can't continue working unless she gets a return-to-work authorization from her physician. And she also gets disability paperwork and the county encourages her to apply for disability benefits that are available through the county's personnel policies. And so she does that and on June 20th, she submits this disability leave request and asks for a leave to July 31st, which was the date of the original leave request. That same day, the leave is denied and she gets notice of that by county personnel. And the next day, July 21st, her employment is terminated and she gets that notice from the county and it says your employment with the county is terminated. And then a few days later, she gets a letter from Judge Jonas saying, we're sorry to hear that you're not able to return to work, we wish you the best. So those are the facts. Can you address the reasons why she was told that? Isn't that really what's at issue here? Whether or not she was able to work and the reasons that the judge in that instance felt that she was not able to continue functioning with her continuing to have this leave. Certainly, your honor. So that's the second issue and I'm happy to go directly to that one, which is, is there an undue hardship here? If I could break in. Before you have the undue hardship question, don't you have the question of, is it a reasonable accommodation at all? And can it be a reasonable accommodation when she can't work at all? Yes, the questions are intertwined, your honor. And some of the decisions indicate that they're really two sides of the same coin. Is it a reasonable accommodation? Is it an undue hardship? In the usual kind of case, the accommodation that is requested involves helping you do the work. A special chair, a special computer, a special climate-controlled room, etc. And then you say, maybe that'd be reasonable for General Motors, but it's not reasonable for Joe's hardware store. But here, the accommodation that's requested is simply not to work, isn't it? It is a request that a leave of absence be extended for three weeks, which is not, that's not working, correct. And that question was answered, your honors, in the case of Sears versus Northeast Ohio Alzheimer's Research Center, where they said that there's nothing extraordinary about an extended leave request being a reasonable accommodation under the Americans with Disabilities Act. And it was also addressed, your honor, in a case that you sat on, Judge Boggs. It's Cleveland versus Federal Express, 83 Fed App 74. It's cited in our brief. It's a 2003 unreported decision where the court approved a six-month rule that it would have been a reasonable accommodation to allow a six-month leave of absence for an employee who was not able to work. And so I appreciate your answer. I just want to get everything in context because there's a lot of moving parts here. You're talking now about the ADA and not about the state statute. Is that correct? That's correct, your honor. And I guess my question, just as a framing question, if we were to decide against you on the issue that you're now currently discussing, and I'm listening carefully to your answer, but if we were to decide against you on that, that would foreclose the need to address all these other issues about whether there's a joint employer and all of that stuff. Is that true? That's true. That's all I want to know. Okay. So if it goes the wrong way for you, it's the end on all these other issues as well is all I'm asking. I agree. Okay. Thank you. So that's the question, whether the three-week leave of absence extension is a reasonable accommodation. And in resolving whether or not it would work in undue hardship, there is a regulation that identifies what the employer should consider, and that is 42 U.S.C. Section 1211 and 10 and 8. And it sets forth four criteria, the nature and the cost of the accommodation, the financial resources of the facility, the financial resources of the covered entity, and the type of operation involved with the covered entity. And it's the position of the plaintiff, your honor, that that analysis was not undertaken in this case because at the time that the request for the accommodation was made, there was not any sort of interactive discussion with the plaintiff or her physicians regarding this request for a leave of absence. In fact, she was terminated the day after she made the request, and the denial occurred on the same day that she made the request. Counsel, again, the principle you just stated about interactive discussions, and we've seen that in a lot of these ADA cases, again, is normally, you know, I need a special type of computer. The company says that's too expensive. How about this kind of computer? You go back and forth. Do you have any cases where that interactive requirement has been used in a leave of absence no work case? I believe that that was discussed, your honor, in the case that I referenced previously, the Cleveland versus Federal Express case. Counsel, you said that was cited in your brief, but I at least took a quick look and didn't see either Sears or Cleveland cited in either of your briefs, or at least not cited in the table of authorities. Sears, your honor, is spelled with a C, C-E-H-R-S. Ah, okay. C-E-H-R. All right. Now we're in business. Yes, sir, I see it. Go ahead. And the Cleveland case is discussed in the reply brief, not in the main brief. You think it starts out as Cleveland versus Federal Express? Yes. I've got your reply brief, and it's not there, but we can find it. Go ahead. Go ahead. I want to use my remaining time to talk about the joint employer doctrine, and that has been recognized in the Sixth Circuit as something that is applicable. That was the Swallows versus Barnes and Noble case, and the court said that the doctrine recognizes that entities that are separate but that share or co-determine matters governing the essential terms and conditions of employment are joint employers. And in this case, your honor, it's clear that the county was paying Renee Mott. It's clear that they decided her benefits, that the personnel policies were being administered by the county, and I cited to the court three cases principally that involved these specific facts. This issue has been resolved in the Seventh Circuit, in the Third Circuit, and then Judge Ludington, who I'm sure Judge Berg is familiar with, analyzed this issue extensively in a case that was decided in the Eastern District of Michigan called Terpa versus County of Mount Morenci, and all of those decisions involving this specific fact pattern where you have an employee ostensibly working for the court but being paid by the county, the courts all concluded that that constitutes sufficient evidence of this joint employer relationship. Can I ask you a question about that doctrine? Yes. Apart from whether it applies to government agencies, you're relying on the joint employer, not the single unitary employer theory. Correct, your honor. My question is, is it the case that when you're under the joint theory that you just look at the actions that, I guess I'm asking, once you find that they're joint for some purposes, does that mean that any discriminatory action by one is the responsibility of the other? Yes. Do you have cases for that? Well, those are the exact fact patterns in Robinson, in Graves, and in Terpa. Those are our cases. No, Robinson is a Seventh Circuit case. Graves is a Third Circuit case. To my knowledge, this is the first time that this issue has been presented to the Sixth Circuit under these unique facts. I'm not talking just about government. I'm talking about whenever you use the joint employer scheme. Yeah, so if you look back at Swallows, it talks about joint employers are employers that jointly determine or share or co-determine essential elements. You could certainly have that in a certain case. Let's say you have a joint case where this part of the pair of joint employers makes these kinds of determinations which are important and fit that category, and this part of the joint employer scheme makes these kinds of decisions which are important and which meet the qualifications that you've described for a joint. So you have a joint employer. Now what I'm asking is when that happens, if only one of them discriminates, can you sue the other one under the joint theory? And there's only cases from foreign circuits that deal with that, apart from whether we're talking about government agencies or not. Do you understand my question? I think I understand your question. I think because the language from Swallows specifically says that they either co-determine or share in determinations of the essential terms and conditions, plural, what that means is that if you have an employer like this situation where you have a judge perhaps that makes the ultimate termination decision, but you have the county that also participates in employment status. I'm giving you the hypothetical where one of them had no participation but was a joint employer but met the qualifications for joint employer because they make some kinds of determinations but had no input into the allegedly discriminatory action at issue. And you're saying it doesn't matter they're still liable or it does matter? I'm saying it doesn't matter. All right, and your cases for that are only cases from other circuits. You don't have Supreme Court or Sixth Circuit cases that say that. Regardless of whether we're talking about joint government employers or joint non-government employers, joint employers in general, you're saying that one of them is responsible for the discriminatory actions of the other, but there's no cases that support it. You just say we should adopt the reasoning of the other circuits. Is that accurate? Not quite. Well, where am I? I understand what I'm asking. I'm trying to see what the rule is because the assumption seems to be, at least in the briefing on the other side, that you've got to have some discriminatory action on the part of the particular one of the pair of joint employers that you're suing. And you're saying no, but I'm trying to get at what the law is that supports your answer no. Certainly, Your Honor. The best law that I have on that is what I've included in the brief, which are the Third and Seventh Circuit decisions. Thank you. Thank you, Your Honor. Any other questions? No. You'll have your two minutes for a moment. Thank you. May it please the Court, Doug Van Esten on behalf of Ottawa County, Michigan. I want to address the joint employer issue first.  we spend a lot of time talking about how in Michigan, because of our unique one court of justice, there really ought to be a per se rule that the county can't be a joint employer. The reality is the Western District adopted the plaintiff's view of the law and said it is theoretically possible that a county could stumble in Michigan into the joint employer relationship. And I am going to look not only principally at the decision making that is objected to, but also these other essential terms and conditions of employment. Now, parties go out and do discovery. So after discovery, the Western District Court of Michigan, and I generally don't like to read from court opinions, but in her ruling she said this, that is to say the essential terms and conditions of plaintiff's employment, which are at issue in this case, were the denial of the plaintiff's request for additional leave and then her corresponding termination, which were undisputably exclusively in the discretion of Judge Jonas. There was no county involvement at all, factually. Then she said this. Is this the court below you were talking about? Yes, and it's at 4546. She also said the other substantive matters and essential terms, such as authority to hire, transfer, promote, discipline, discharge, and direct work assignments. None of those, was there any evidence that Ottawa County was involved in those decision making? Here's my question. If you get to this issue, it kind of boils down to this. I'm looking for law, not what the court said below or what some district court has said. Law that would control us on the question of whether or under the joint employer doctrine, regardless of whether it's in the public or the private area, under that doctrine, under the ADA, I guess. If you have enough of these types of decisions made by both employers, generally speaking, we look at the whole group of kinds of decisions they make, and sure enough, in my hypothetical, there's enough for each of them to be a joint employer in general. But only one of them was involved in the discriminatory determination that's challenged in a particular case. Is it your position that, therefore, there's no recovery against the other? Yes. Now, what cases do you have that supports that, is my question. There is a dearth of cases on that, Your Honor. So you don't have case law, and neither do they have case law, other than other circuits. Other than in this situation, Your Honor, you don't have to reach there because the lower court recognized that there wasn't any facts to support any involvement in co-determination. That's a harder case for us to uphold. I would add this, that I made an alternative Eleventh Amendment argument, which I think makes whatever ruling the court made on the joint employer. I thought the Eleventh Amendment was underlying the whole problem here because it only lies against one of them. You can't sue under the ADA because of the Eleventh Amendment, but because of the other, you can. Is that not the case? Well, the county is the only entity sued under the ADA. The court is not there, and the court will be gone. And in this case, the only relief requested by the plaintiff is reinstatement. There is no back pay because she's making more money. There can be no front pay because she wants reinstatement. And the judge testified in paragraph 20 of her affidavit, I got along famously with her. There was no personal animus. And so, Your Honor, if this case were remanded, if somehow you reverse the lower court on the finding I just made that there's no evidence of a joint employer in this case using his version of the law, you would be stuck with an Eleventh Amendment problem because the request is reinstatement, and Ottawa County can't give that. Frankly, even the court can't give that because she wasn't just a clerk. She was the court's secretary court reporter, which under Michigan law, under the court rule, 600-591 is the exclusive decision-making of the judge herself. So in this case, I couldn't give the relief he would be seeking if there was an ADA claim against only the county. And in this unusual circumstance, I think the Eleventh Amendment will apply. When we're talking about what precedent there is on joint employer, it's not our circuit, but the Eleventh Circuit case of lies, L-Y-E-S, does that support you? Is that the kind of rule that you'd like us to adopt? Yes, and I think in Michigan that should be the rule because of the unique nature of the relationship and authority. In Michigan, it is ultra-various for the court to allow any intrusion by the county or our municipal funding unit into the control. That's not a joint case, though, right? That's a single-employer case, what they're not relying on. Mr. Gretzinger can address that in more detail, but my understanding is it was the same theory, Your Honor, that was addressed in the lies case, and the court concluded that you couldn't do it. It was the joint theory, not the single judge? That's my understanding. Mr. Gretzinger can answer that more specifically, Your Honor. I apologize. Judge Boggs, getting to your question about whether she was a qualified individual, I thought this court was prescient in Walsh. Whether it intended to or not, it anticipated this case. We spend a lot of time in our briefing discussing whether this six-week request for additional leave was short and definite, which is possible under the ADA. But in Walsh, this court concluded that you really have to prove two things to get out of the norm, as Judge Boggs has alluded to, and approve a leave under the ADA. One is that it be short and definite. Two, that it be accompanied by a reasonable prospect for recovery. And that's where this case fell. If you read Judge Jonas' affidavit, and by the way, she was prescient because Ms. Mott was disabled for at least six months by her own admission after August 1st. What the judge concluded was this. She wants a few weeks to go to the University of Michigan where hopefully they'll diagnose what is causing her emboli. We're not even through the diagnostic stage after six months. And so the hope is they'll diagnose it,  where she testified to this. She's waiting for the University of Michigan to try to evaluate her, they haven't even seen her, and find out what's causing her condition. Then hopefully they'll come up with a treatment, then hopefully she'll have a period of convalescence. And the judge said, I cannot wait any longer. So under Walsh itself, she's not a qualified individual under this unusual exception to the general rule of ADA. Which brings us to the final question of undue hardship. The plaintiff in the reply brief says, well, all of Judge Jonas' analyses are subjective. And he picks out one where she said, my court is not projecting consistency. For the sake of argument, I'll say that's subjective. But every other paragraph in paragraph 9 of her affidavit was objectively verifiable. The replacement court reporter wasn't certified. That meant other court reporters had to do her transcripts. She didn't understand the equipment, and I had to wait there while another court reporter from another court would come in and tell her how to work the recording equipment. She couldn't do orders, or she couldn't do rudimentary opinions in small claims cases, like my secretary should be able to do. Other secretaries had to come in and complained about it to do her work. She wanted to be relieved of this responsibility, and we were without at least a full-time position. We were down to a half-time position during all of this period of time. All of those were objective facts that were verifiable that the plaintiff failed to put in genuine issue. So for all of those reasons, not adjoining... Are you representing which of the two parties? I represent the county, Your Honor. You represent the county. Do you have some kind of agreement about how much time you're going to... No, but I should defer and let Mr. Gretzinger handle the lies decision. Let me give you a final question. It seems that there are several potential strings to your bow here. Do you have any preference, or do you have any objection, for example, if we decided it on the merits, in the sense of whether a no-work leave was reasonable or if you prefer that we press on to either the joint employer or the sovereign immunity? As a county lawyer that gets these cases periodically, I appreciate the decisions coming out of the Eastern District, both Pucci and Dolan, handled by this court under the 11th Amendment that basically said in Michigan, because of the dignity factors under the Seminole Tribe case, we should not wade in and second-guess court decisions by the state court. That would be most helpful, Your Honor, to my client as we go forward, but I leave it to your sound discretion as to how you handled it under your rules of prudence. Thank you. Mr. Van Essen and I have done this for a while, and he always takes my time. I think it's important to remember, first, on the factual matter here, the court recorder secretary is the most important position our elected judges have. In here, you've got a document on there, the leave of absence was not granted on a full-time basis. We exercised our right under FMLA to put her in a part-time position other than the court recorder because it was an undue hardship in January for us not to have a full-time clerk. I think it's important when you look at the question you're asking on here, is that I'm an old-time labor lawyer. I do a lot of things in there, and when you come in the concept of joint employer you're all struggling with, it's a concept that comes from labor law in the private sector where we have entities that can create anything they want to. So they create this then trying to have some different provisions, which say we're here, we're creating this little portion. Government is different. The Lies case is very clear in point. It talks about what we have here. The Lies case deals with single employers, is that correct? It deals with the concept, yes. There's two different theories. One is joint employer, one is single employer. The issue here is joint employer. In that case, it's single employer. Is that true? That's true. But that's the one they had addressed because what they were talking about is aggregating the number of employees so they could even get into court. The concept there is very accurate, though. When you start talking about what we have is that we have a system of government that is set up by statutes and by constitutions. And I think what Lies said very clearly is that when you look at that, there's a presumption that whatever the state sets up is intended to be that way because you can't create interlocking things unless you do it. We have statutes that allow people to do intergovernmental cooperation, but you have to create it and you have to determine who the employer is. So I think it's critically important, when you look back at Michigan from here, is that Lies says, remember, comity and federalism says you defer to what the state has set up unless there's some reason to say it's totally unlawful. In here, when you start deferring. That would make a lot more sense in the single employer context than it would in the joint employer context, where arguably, and I don't want to make the argument for them, but arguably it's different because you're just talking about particular decisions and which entity was making that decision rather than talking about changing the wiring diagram for the state, which you would be doing if you were talking about the single employer. The joint employer is just kind of a legal fiction. There are all kinds of various. What they're trying to find out is how they're going to put liability elsewhere. In here, when you look... If it's just a legal fiction dealing with liability, then it doesn't interfere the way Lies was concerned about it. Well, I think when you look back at here, what we do in Michigan from there, is that we've fought the battle in Michigan regarding co-employer and joint employer and sole employer. And in here, I remember being on the forefront when I had to tell a judge his order wasn't an order and he wanted to throw me in jail, but he didn't. From there, when we eventually got it, the Supreme Court threw it out. But in here, we've developed a system in which our legislature attempted to make the county a co-employer. Our Supreme Court said, not in this state. We're a separate branch of government, but they said we should cooperate. And they divided the things we can cooperate. You can let the county, for financial reasons, take care of some of the backroom stuff, but every core employer part, from hiring, firing, disciplining, is reserved and cannot be delegated away from the court. And that's when you look back at the assessment... They can make some kind of decisions, right? No. You said they can do this, this, and this, but they can't do this. What is the first part that they can do? The court has been directed to say, cooperate with your funding entity. If you wish to utilize some of their services, instead of building up your own empire and having your own HR department... I'm just asking you what you said a minute ago when you said they can do X. What is it that they can do? What can't they do? What can the county do? The county can't do anything on their own. Nothing. We can, as the court... Not on their own. They can do nothing on their own, other than write us a check to fund us. What if, when they're writing the check, they discriminate? You can't sue them. You can't discriminate in writing a check. Well, I could probably figure out a way, but you're sort of fighting the hypothetical. The court can agree to let, let's just say the county, write checks, buy insurance, decide which insurance company to provide health care. That sort of thing. But they act as our agent. We have to agree to that. We used to have big fights and go to litigation over what things they're going to have there. We solved it, and our Supreme Court gave us a direction in Administrative Order 1988-5. Be nice. Follow to the best you can what's there. We don't want their... I see how you're answering the question about the things that the county can do. The county can't do anything. The county is delegated to take care of certain kinds of ministerial... Your Honor, the county, by statute, has no independent authority to do anything. What, in fact, in your area are they doing as part of this being nice? I think that's the question. We've used their payroll system to write paychecks from there. All right, so what if they operate their payroll system without even asking you, without even asking the judge, and they do it in a way that discriminates against disabled people? You can say, well, that'll never happen, or that's impossible, or they're doing it at the authority. I'm asking you, what if they do do that? You don't think that they can do that? It's impossible to come here and come up with a hypothetical? They do our payroll, and we tell them how many hours people work. We do all the recordkeeping there. They write the checks. So they're acting just on our behalf from there. If they write a check that's wrong, we tell them, you need to make sure this person gets their full paycheck. Well, if you don't want to answer the question, that's fine. It's not a question that I can answer, Your Honor, because you can't be discriminated against by having your check not come in in the right amount because somebody does a mathematical calculation that wouldn't be based on any disability. Any other questions? No. Thank you. Mr. Blaser, you have two minutes for rebuttal. Thank you, Your Honor. So, Judge Boggs, the Cleveland decision is referenced at pages 19 and 20 of our reply brief, and I apologize it did not make it into our table of authorities. I think it's because it's included in a cite to another case. And, Judge Rogers, I want to get back to this issue of the joint employer doctrine and can the two entities parcel out the responsibility and therefore not be jointly liable. Sitting at my table, I remembered the case of Grace v. U.S. Carr, G-R-A-C-E. I do not have the cite for it. It is an FMLA case, but it discusses extensively, it's a reported decision by this court, how both the temporary agency that provided the employee and the location where that employee worked, how both of those entities were responsible. But I think the reason that it doesn't come up very often and the reason I'm relying upon these Third and Seventh Circuit cases is because this whole situation where you have a court employee that's working, as I say, ostensibly for the court but is being provided certain benefits and the county is involved in the administration of benefits and the administration of leave, it's kind of an unusual fact pattern and that's why it hasn't arisen in the Sixth Circuit. But I would urge the court to look extensively at the Robinson case and the other Third Circuit case that I discussed in the brief because those are our facts here where it's clear that the court made the termination decision but the county was stuck with the liability. And one thing that the Third Circuit says is the reason that we have to do that is because the county is an indispensable party. If there is a judgment that's entered against the court, it's going to be paid by the county anyway. So I would urge the court to take a look at that. With regard to the Walsh case, Your Honor, I think that that's distinguishable because that involved an employee that was off work for a year, said that he didn't know when he was going to come back to work, he had a hope that he was going to come back to work. What about that question of the reasonable prospect of recovery? How do you respond to that here? I mean, was the judge aware of her condition to such an extent that she would have been concerned and appropriately so that she's not going to be able to return by the date that she asked for? Your Honor, I respectfully would say that she could not have been. There was no communication between my client and the judge regarding her medical condition. There was no discussion that took place with her doctor. All of these facts developed after the termination, and I submit that the reason her condition got worse is because she had to go to a whole new set of doctors. She couldn't treat with her original treating physicians at U of M. She had to go to Wayne State, and they had a different treatment protocol. Definite in the sense that she said, I can be back to work by August 1st, supported by a medical determination by her physician that she should be able to come back to work. And she testified, my hope was to come back earlier than that. So all this stuff that occurs after the termination I don't believe is pertinent to the court's inquiry regarding that specific question of, did she have a short and definite time frame? Counsel, most of those cases that we've been discussing, you've been citing, are prior to our en banc decision in Ford Motor Company versus EEOC last year, which said that regular and predictable attendance, that was a person who wanted to work from home whenever she wished, and we held that that wasn't a reasonable accommodation. Do you have any discussion of what impact that case should have? Certainly, Your Honor. I've read the Ford decision. It's a very well-known decision, and it deals with the issue of working from home. That's not the situation here. She was working right up until the time that she was terminated, within a day or two, at the court. And so the question is... Regular and predictable attendance, and in her case, at least for this period we can argue about how long, there wasn't going to be any regular and predictable attendance, correct? Yeah, I agree, Your Honor. And I think you have to look at the Sears case, the CEHRS case, and look at the other cases, the First Circuit case and another case where... Those are prior to Ford, aren't they? They are prior to Ford. It's my position that Ford doesn't answer this question, Your Honor. Thank you so much. Counsel. That case will be submitted, and the court may call the next case.